1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DALADIER FITZGERALD
     MONTUE, Jr.,
11
                    Petitioner,                    2: 08 - cv - 2397 TJB
12
           vs.
13
     D.K. SISTO,
14
                    Respondent.               ORDER
15
     _____/
16

17                           I.  INTRODUCTION

18          Petitioner, Daladier Fitzgerald Montue, Jr., is a state prisoner proceeding with a

19   counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C.

20   § 636(c)(1), Petitioner consented on March 24, 2009 to have a United States Magistrate Judge

21   conduct all further proceedings in this case.  Respondent consented on July 17, 2009.  Petitioner

22   is currently serving a sentence of fifteen years to life imprisonment following his conviction for

23   discharging a firearm at an occupied motor vehicle along with an enhancement for committing

24   the offense for the benefit of a criminal street gang.  Petitioner raises several claims in his

25   petition; specifically:  (1) there was insufficient evidence to support the conviction for

26   discharging a firearm at an occupied motor vehicle ("Claim I"); (2) the trial court erred in its jury

1

1   instructions on the elements of the offense of discharging a firearm at an occupied motor vehicle

2   ("Claim II"); (3) the trial court erred in failing to instruct the jury using CALJIC No. 5.32 on the

3   use of force in the defense of others ("Claim III"); (4) the trial court erred in failing to instruct the

4   jury using CALJIC No. 4.43 on the necessity defense ("Claim IV"); and (5) Petitioner's counsel

5   was constitutionally ineffective in several respects ("Claim V").  For the following reasons,

6   Petitioner's habeas petition is denied.

7                                II.  FACTUAL BACKGROUND[1]

8   This case arose from a turf battle between two competing criminal
    street gangs in Del Paso Heights, the Del Paso Heights Bloods and
9   the Nogales Crips.  On May 18, 2005, Donshea Ransom, a
    validated Nogales Crip, was on Beldon Street, an area claimed by
10  the Del Paso Heights Bloods.  Ransom was talking to James
    Whitfield.  Whitfield, known as Bloodshot, is an older gangster in
11  the Del Paso Heights Bloods gang.  Whitfield told Ransom that
    when he drove by the other day and threw up a Crip hand sign it
12  was disrespectful to the Blood's neighborhood.  Ransom
    apologized and said he would not do it again.
13
    Two days later, defendant and Ransom drove up to Beldon Street
14  in a station wagon.  Ransom was driving.  Ransom let defendant
    out at his grandfather's house and defendant went inside.  Ransom
15  parked the car.  There were a lot of young children outside playing
    and several women watching them.
16
    Ransom began having words with several young men on the street
17  who were members of the Del Paso Heights Bloods gang.  The
    argument was about a sign Ransom had made.  Ransom
18  complained he was not going to let them keep "checking" him for
    the same thing.  He had apologized and did not want to keep being
19  confronted.  At least two of the men told Ransom he had
    "disrespected" them.
20
    Ransom threw down his cell phone and challenged the others to a
21  fight.  "Oh, fuck this.  Anybody want to fade me.  Let's do this."
    To fade means to fight.
22
    Just then defendant came out of the house in a rage.  He told
23  Ransom to get off the block.  Ransom returned to the station
    wagon and left with another Crip.  By the time Ransom got to the
24

    ─────────────────

25       [1]  The factual background is taken from the California Court of Appeal, Third Appellate
    District opinion filed on July 30, 2007 and lodged as document B by Respondent which was filed
26  in this Court on August 18, 2009 (hereinafter referred to as "Slip Op.").

                                            2

stop sign, defendant was shooting at the car.  Defendant fired seven
shots, holding the gun above his head and sideways.  Just before
the shooting began, Whitfield got the gun out of a car and handed it
to defendant.

After the shooting one of the men said, "Come on, man.  Let's go
get that nigger.  We [are] going to get him."  The speaker and
defendant took off in a Mustang.  Others left in another car.

(Slip Op. at p. 2-3.)

### III.  PROCEDURAL HISTORY

Defendant and Whitfield were charged with attempted murder and
shooting into an occupied vehicle, with a gang enhancement.
Before defendant's trial, Whitfield entered a plea of no contest to
attempted murder and a prior prison term allegation in exchange
for an eight-year sentence.  As part of the plea agreement,
Whitfield agreed he would assert his Fifth Amendment privilege
and not testify if called by either the prosecution or the defense in
defendant's case.

Defendant testified in his defense.  He claimed he had been friends
with Ransom since they were children.  While he was in the house,
he heard arguing and became concerned for Ransom's safety
because he was outnumbered.  He tried to get Ransom to leave.  As
Ransom was leaving, Whitfield approached and told defendant that
if he did not attack Ransom, Whitfield would kill defendant.
Whitfield told defendant to take care of Ransom or he (Whitfield)
would take care of defendant.  Defendant was afraid for Ransom,
so he shot.  He did not intend to hit the car or the passengers.
Since Ransom was his friend, defendant did not fear that Ransom
would return fire.

(Slip Op. at p. 3-4 (footnote omitted).)

The jury deadlocked on the attempted murder charge which was then dismissed but

convicted Petitioner of discharging a firearm into an occupied motor vehicle in violation of Cal.

Penal Code § 246 with a gang enhancement pursuant to Cal. Penal Code § 186.22(b)(1).

On appeal, Petitioner raised the issues he raises in this federal habeas petition minus some

of his ineffective assistance of counsel claims.  On July 30, 2007, the California Court of Appeal,

Third Appellate District affirmed the judgment.  The California Supreme Court summarily

denied the petition for review on October 10, 2007.  Petitioner filed the instant federal habeas

1    petition on October 9, 2008.

2                   IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

3          An application for writ of habeas corpus by a person in custody under judgment of a state

4    court can only be granted for violations of the Constitution or laws of the United States.  See 28

5    U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v.

6    Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

7    Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

8    and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

9    320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

10   decided on the merits in the state court proceedings unless the state court's adjudication of the

11   claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

12   clearly established federal law, as determined by the Supreme Court of the United States; or (2)

13   resulted in a decision that was based on an unreasonable determination of the facts in light of the

14   evidence presented in state court.  See 28 U.S.C. 2254(d).

15         As a threshold matter, this Court must "first decide what constitutes 'clearly established

16   Federal law, as determined by the Supreme Court of the United States.'"  Lockyer v. Andrande,

17   538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law'

18   under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court

19   at the time the state court renders its decision.'"  Id. (citations omitted).  Under the unreasonable

20   application clause, a federal habeas court making the unreasonable application inquiry should ask

21   whether the state court's application of clearly established federal law was "objectively

22   unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may

23   not issue the writ simply because the court concludes in its independent judgment that the

24   relevant state court decision applied clearly established federal law erroneously or incorrectly.

25   Rather, that application must also be unreasonable."  Id. at 411.  Although only Supreme Court

26   law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in

                                              4

determining whether a state court decision is an objectively unreasonable application of clearly

established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only

the Supreme Court's precedents are binding . . . and only those precedents need be reasonably

applied, we may look for guidance to circuit precedents.").

The first step in applying AEDPA's standards is to "identify the state court decision that

is appropriate for our review."  See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).

When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the

last reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  The last

reasoned decision with respect to Claims I-IV was from the California Court of Appeal.

With respect to Claim V, Petitioner only raised the issue of whether his counsel was

ineffective for stipulating that Petitioner had a prior felony conviction when in actuality it was a

misdemeanor conviction to the California Supreme Court.  None of Petitioner's remaining

arguments within Claim V were raised to the California Supreme Court.  A petitioner satisfies

the exhaustion requirement by providing the highest state court with a full and fair opportunity to

consider each claim before presenting it to the federal court.  See Baldwin v. Reese, 541 U.S. 27,

29 (2004); Fields v. Waddington, 401 F.3d 1018, 1020 (9th Cir. 2005).  As Petitioner never

raised some of its arguments within Claim V to the California Supreme Court they are deemed

unexhausted.  See 28 U.S.C. § 2254(b)(1).  Nevertheless, unexhausted claims may "be denied on

the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of

the State." 28 U.S.C. § 2254(b)(2).  A federal court considering a habeas corpus petition may

deny an unexhausted claim on the merits when it is perfectly clear that the claim is not

"colorable."  See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

## V.  PETITIONER'S CLAIMS FOR REVIEW

A.  Claims I and II

In Claim I, Petitioner argues that there was insufficient evidence to support the conviction

for discharging a firearm at an occupied motor vehicle in violation of Cal. Penal Code § 246.[2]  In

Claim II, Petitioner asserts that the trial court erred in instructing the jury on the elements that of

§ 246 offense.  The California Court of Appeal rejected these arguments on direct appeal;

specifically, that court stated the following:

> Defendant contends there was insufficient evidence of shooting at
> an occupied vehicle because there was no evidence defendant fired
> "at" the car.  Defendant argues that since he failed to hit the car, a
> large and close target, he must not have been trying to hit it or
> aiming "at" it.  He further contends the trial court erred in
> responding to the jury's question about the requirements of Penal
> Code section 246.  He asserts the evidence shows only that he
> negligently discharged a firearm, so the conviction must be reduced
> to a violation of Penal Code section 246.3.
>
> First, there was substantial evidence defendant fired "at" the
> car.  [FN 2].  Three women witnessed the shooting and testified at
> trial.  The first described the shooting as defendant pointing a gun
> "towards" Ransom in the station wagon.  The second testified,
> "Rico [defendant] starts shooting at him [Ransom]."  The third
> said, "He was shooting at Donshea, at the station wagon."
>
> [FN 2]  A detective who examined the car found a small hole in the
> metal frame.  He testified the hole was consistent with a bullet
> strike, but he could not prove it.  In closing argument, defense
> counsel asserted the hole was on the wrong side of the car to be
> from the shooting.
>
> The jury was instructed that in order to find a violation of Penal
> Code section 246, it must find defendant "discharged a firearm at
> an occupied vehicle [.]" [FN 3]  During deliberations, the jury
> asked, "In the law does the word 'at' mean directly at or in the
> general direction of (PC 246) [?]"  Both counsel met in chambers
> to review the court's response.  The court responded:  "A violation
> of Penal Code section 246 is not limited to shooting directly at an
> occupied vehicle.  Rather, it proscribes shooting either directly at

---

[2] Cal. Penal Code § 246 states that:

> Any person who shall maliciously and willfully discharge a firearm
> at an inhabited dwelling house, occupied building, occupied motor
> vehicle, occupied aircraft, inhabited housecar, as defined in Section
> 362 of the Vehicle Code, or inhabited camper, as defined in
> Section 243 of the Vehicle Code, is guilty of a felony, and upon
> conviction, shall be punished by imprisonment in the state prison
> for three, five, or seven years, or by imprisonment in the county jail
> for a term of not less than six months and not exceeding one year.

or in close proximity to an occupied motor vehicle under circumstances showing a conscious disregard for the probability that one or more bullets wills trike the vehicle or persons in or around it."

[FN 3]  The court instructed the jury in the language of CALJIC No. 9.03 as follows:  "Every person who willfully and maliciously discharges a firearm at an occupied vehicle is guilty of a violation of Penal Code section 246.  [¶]  In order to prove this crime, each of the following elements must be proved:  [¶]  Number one, a person discharged a firearm at an occupied vehicle; and [¶]  Number two, the discharge of the firearm was willful and malicious."

Defendant contends it was error to instruct the jury it could convict defendant if he fired "in close proximity" to the car.  He argues that instruction permitted a guilty verdict simply because defendant was close to the car when he fired.  Defendant contends his goal or objective must be considered and it is clear that he did not intend to hit the car, but purposefully missed it.

Although he frames the issue as substantial evidence or instructional error, defendant's insistence that his goal and objective are the focus of Penal Code section 246 presupposes that section 246 is a specific intent crime, requiring the specific intent to strike the target.  Because Penal Code section 246 is a general intent crime (People v. Watie (2002) 100 Cal.App.4th 866, 879), defendant's contention fails.

In People v. Overman (2005) 126 Cal.App.4th 1344, defendant was convicted of assault with a firearm and discharging a firearm at an occupied building.  The defense was that defendant did not shoot at anyone or any buildings, but discharged his gun into the air.  (Id. at p. 1354.)  As here, defendant argued if he had been shooting at anyone or anything, he would have hit his targets.  (Id. at p. 1355.)  During deliberations, the jury asked if, for the crime of shooting at an occupied building, the building had to be the actual target.  The court responded it was sufficient that defendant was aware of the probability some shots would hit the building and he was consciously indifferent to that result.  (Ibid.)

Defendant challenged this additional instruction on appeal, but the court held it was proper.  (People v. Overman, supra, 126 Cal.App.4th at p. 1355.)  "[S]ection 246 is not limited to shooting directly at an inhabited or occupied target.  Rather, it proscribes shooting either directly at or in close proximity to an inhabited or occupied target under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target or person in or around it."  (Id. at pp. 1355-1356, italics in original.)  The Overman court relied on People v. Chavira (1970) 3 Cal.App.3d 988, in which a conviction under Penal Code section

1    246 was upheld where defendant fired at persons standing outside a
building.  Since the court's additional instruction here was virtually
2    the same as given in Overman, we find no error.

3    Defendant contends these cases are distinguishable because he did
not consciously disregard the probability he might hit the car.
4    Rather, defendant contends, he was careful and avoided hitting
anyone or anything.  The jury was free to view the facts differently.
5    The jury could reasonably conclude that defendant, described by a
witness as in a rage, fired several shots quickly and in the direction
6    of the station wagon in complete disregard of the probability that
he might hit the car or someone near it.  Substantial evidence
7    supports the jury's verdict and the trial court did not err in
responding to the jury's question.

8

9    (Slip Op. at p. 4-7.)

10        The Due Process Clause of the Fourteenth Amendment "protects the accused against

11    conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

12    crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient

13    evidence to support a conviction, if, "after viewing the evidence in the light most favorable to the

14    prosecution, any rational trier of fact could have found the essential elements of the crime beyond

15    a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he dispositive question

16    under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond

17    a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir. 2004) (quoting Jackson,

18    443 U.S. at 318).  A petitioner for a federal writ of habeas corpus "faces a heavy burden when

19    challenging the sufficiency of the evidence used to obtain a state conviction on federal due

20    process grounds."  Juan H. V. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

21        A federal habeas court determines sufficiency of the evidence in reference to the

22    substantive elements of the criminal offense as defined by state law.  See Jackson, 443 U.S. at

23    324 n.16.  As noted in supra note 2, the elements that a person has violated section 246 is that he

24    maliciously and willfully discharged a firearm at an occupied motor vehicle.  Upon reviewing the

25    record in the light most favorable to the prosecution, Petitioner's argument that there was

26    insufficient evidence to support his § 246 conviction does not warrant federal habeas relief.  For

example, one eyewitness testified that Petitioner came out of his grandfather's yard in a rage

shooting and that his gun was pointed at Ransom as he was in his station wagon.  (See Reporter's

Tr. at p. 47-48.)  Another eyewitness testified that she saw the Petitioner shoot directly at

Ransom's station wagon while he was driving.  (See id. at p. 100.)  A third eyewitness also

testified that the Petitioner was shooting at Ransom at the station wagon.  (See id. at p. 163.)

Viewing the evidence in the light most favorable to the prosecution, Petitioner's insufficiency

claim as stated in Claim I with respect to his Section 246 conviction lacks merit.  There was

sufficient evidence in the record such that any rational trier of fact could have found that

Petitioner's actions satisfied the elements of Section 246.  Thus, Petitioner is not entitled to

federal habeas relief on Claim I.

In Claim II, Petitioner argues that the trial court erred in its response to a jury question

with respect to an element of Section 246.  Specifically, as stated by the Court of Appeal on

direct appeal, the jury asked whether the word "at" in Section 246 meant directly at or in the

general direction of the occupied motor vehicle.  (See Clerk's Tr. at p. 157.)  As previously

stated, the trial judge responded that:

> A violation of Penal Code section 246 is not limited to shooting
> directly at an occupied vehicle.  Rather, it proscribes shooting
> either directly at or in close proximity to an occupied motor vehicle
> under circumstances showing a conscious disregard for the
> probability that one or more bullets wills trike the vehicle or
> persons in or around it.

(Id. at p. 159, 161.)  Citing to a dictionary definition of "at," Petitioner argues that the trial

judge's answer to the jury was improper.

A challenge to a jury instruction solely as an error under state law does not state a claim

cognizable in a federal habeas corpus action.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the

ailing instruction by itself so infected the entire trial that the resulting conviction violates due

process.  See id. at p. 72.  Additionally, the instruction may not be judged in artificial isolation,

9

1  but must be considered in the context of the instructions as a whole and the trial record.  See id.

2  The court must evaluate jury instructions in the context of the overall charge to the jury as a

3  component of the entire trial process.  See United States v. Frady, 456 U.S. 152, 169 (1982).

4  Furthermore, even if it is determined that the instruction violated the petitioner's right to due

5  process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial

6  influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson,

7  507 U.S. 619, 637 (1993), which is whether the error had substantial and injurious effect or

8  influence in determining the jury's verdict.

9       As stated by the California Court of Appeal, the state court determined that the judge's

10 instruction regarding the meaning of "at" as used in Section 246 was proper under state law.

11 Federal courts are bound by state court rulings on questions of state law.  See Oxborrow v.

12 Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).  In this case, the alleged error did not violate

13 Petitioner's federal constitutional rights.  The jury instruction regarding "at" was proper.  The

14 state court analyzed whether the trial judge's response to the jury question regarding the meaning

15 of "at" within section 246 complied with the relevant law.  It determined that it did, relying on

16 relevant caselaw.  Under these circumstances, Petitioner is not entitled to federal habeas relief on

17 Claim II.

18       B.  Claim III

19       In Claim III, Petitioner argues that the trial court erred by refusing to instruct the jury

20 using CALJIC No. 5.32 on the use of force in the defense of others.  The California Court of

21 Appeal analyzed this Claim on direct appeal:

22          The defense requested an instruction on use of force in defense of
            others, CALJIC No. 5.32.  [FN 4]  The court refused the requested
23          instruction, finding that the instruction on duress adequately
            covered the defense position and CALJIC No. 5.32 would confuse
24          and mislead the jury.  The court found the potential injury to be
            inflicted on Ransom by Whitfield was neither imminent nor close
25          in time because defendant held the gun.

26          [FN 4] CALJIC No. 5.32 reads:  "It is lawful for a person who, as a

10

reasonable person, has grounds for believing and does believe that bodily injury is about to be inflicted upon [another person] [ ____ ] to protect that individual from attack.  [¶]  In doing so, [he] [she] may use all force and means which that person believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent."

Defendant contends this ruling was prejudicial error.  He contends duress and defense of others are conceptually different.  Duress focuses on the threat to defendant, while defense of others focuses on the threat to Ransom.  He argues he fired, in part, to protect Ransom from an imminent attack.  Although he held the gun, he contends an attack by Whitfield was still imminent because Whitfield could have procured another gun or chased Ransom in a car.  Defendant asserts whether the attack was imminent was a question for the jury.

"A defendant in a criminal matter has a constitutional right to have the jury decide every material factual matter presented by the evidence.  [Citations.] . . . [¶]  The test, however, as to when an instruction must be given is whether there was substantial evidence presented which would warrant the giving of the instruction.  [Citation.]  A jury instruction need not be given whenever *any* evidence is presented, no matter how weak.  [Citation, italics in original.]  Rather, the accused must present 'evidence sufficient to deserve consideration by the jury, i.e., evidence from which a jury composed of reasonable men could have concluded that the particular facts underlying the instruction did exist.  [Citation.]  [¶]  This does not require – or permit – the trial court to determine the credibility of witnesses.  It simply frees the court from any obligation to present theories to the jury which the jury could not reasonably find to exist.'  [Citation.]"  (People v. Strozier (1993) 20 Cal. App.4th 55, 62-63 [no error in refusing instruction on use of force in defense of another].)

To warrant giving the instruction, defendant had to produce sufficient evidence that he shot to prevent an imminent injury to Ransom.  "Any other person, in aid or defense of the person about to be injured, may make resistence sufficient to prevent the offense."  (Pen. Code, § 694.)  Defendant failed to present such evidence.  Although defendant testified he was afraid for Ransom, he testified he shot because he was afraid of what Whitfield would do to him.  Further, there was no evidence from which a reasonable jury could find injury to Ransom, from anyone other than defendant, was about to occur or imminent when Ransom was speeding away from Belden Street.  There was no evidence of another gun or that Whitfield made any threats or took any actions against Ransom other than handing the gun to defendant.

The trial court did not err in refusing to give CALJIC No. 5.32.

1   (Slip Op. at p. 7-9.)

2         As previously stated, claims based on instructional error under state law are not

3   cognizable on federal habeas review.  See Estelle, 502 U.S. at 71-72 (citing Marshall v.

4   Lonberger, 459 U.S. 422, 438 n.6 (1983); see also Menendez v. Terhune, 422 F.3d 1012, 1029

5   (9th Cir. 2005).  To receive federal habeas relief for an error in jury instructions, Petitioner must

6   show that the error so infected the entire trial that the resulting conviction violates due process.

7   See Estelle, 502 U.S. at 72; see also Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  "Due

8   process requires that criminal prosecutions 'comport with prevailing notions of fundamental

9   fairness' and that 'criminal defendants be afforded a meaningful opportunity to present a

10  complete defense.'"  Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California v.

11  Trombetta, 467 U.S. 479, 485 (1984)).  "'A defendant is entitled to an instruction on his theory

12  of the case if the theory is legally cognizable and there is evidence upon which the jury could

13  rationally find for the defendant.'"  United States v. Boulware, 558 F.3d 971, 974 (9th Cir. 2009)

14  (quoting United States v. Morton, 999 F.2d 435, 437 (9th Cir. 1993); see also Bradley v. Duncan,

15  315 F.3d 1091, 1098 (9th Cir. 2002); Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 1999).

16        "'Failure to instruct on the defense theory of a case is reversible error if the theory is

17  legally sound and evidence in the case makes its applicable.'"  Byrd v. Lewis, 566 F.3d 855, 860

18  (9th Cir. 2009), cert. denied, – U.S. –, 130 S.Ct. 2103, 176 L.Ed.2d 733 (2010) (quoting

19  Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004)).  In order to obtain federal habeas

20  relief on this Claim, Petitioner "must show that the alleged instructional error had substantial and

21  injurious effect or influence in determining the jury's verdict."  Id. (internal quotation marks and

22  citations omitted).  "A substantial and injurious effect means a reasonable probability that the

23  jury would have arrived at a different verdict had the instruction been given."  Id. (internal

24  quotation marks and citation omitted).  In this case, the burden on Petitioner is especially heavy

25  where the alleged error involves the failure to give an instruction.  See id.  An omission or an

26  incomplete instruction is less likely to be prejudicial than a misstatement of law.  See Henderson,

12

431 U.S. at 155; see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

As noted by the California Court of Appeal in its decision on direct appeal, Petitioner testified that Whitfield told him to "take care" of Ransom or else Whitfield was going to "take care" of Petitioner.  (See Reporter's Tr. at p. 292.)  Thus, the threat by Whitfield was toward Petitioner, not Ransom.  As the Court of Appeal correctly noted, the trial court instructed the jury on the defense of duress, and there was no evidence that Whitfield made threats or took actions against Ransom that Petitioner was defending.  Thus, the trial court did not commit constitutional error in declining to give CALJIC 5.32.  Federal habeas relief is not warranted on Claim III.

C.  Claim IV

In Claim IV, Petitioner argues that the trial court erred in refusing to instruct the jury using CALJIC No. 4.43 on the necessity defense.  The California Court of Appeal analyzed this Claim on direct appeal and stated the following:

> The defense also requested an instruction on necessity, CALJIC No.4.43.  [FN 5]  The trial court refused the instruction, noting that duress and necessity were distinct defenses.  The court found no factual basis for the defense of necessity.
>
> [FN 5]  CALJIC No. 4.43 provides:  "A person is not guilty of a crime when [he] [she] engages in an act, otherwise criminal, through necessity.  The defendant has the burden or proving by a preponderance of the evidence all the facts necessary to establish the elements of this defense, namely:  [¶]  1.  The act charged as criminal was done to prevent a significant and imminent evil, namely, [a threat of bodily harm to oneself or another person] [or] [___]; [¶]  2.  There was no reasonable legal alternative to the commission of the act; [¶]  3.  The reasonably foreseeable harm likely to be caused by the act was not disproportionate to the harm avoided; [¶]  The defendant entertained a good-faith belief that [his] [her] act was necessary to prevent the greater harm; [¶]  5.  That belief was objectively reasonable under all the circumstances; and [¶]  6.  The defendant did not substantially contribute to the creation of the emergency."
>
> Defendant contends the trial court erred.  He asserts all the elements of a necessity defense are true or arguably true.  We strongly disagree.
>
> The necessity defense is not codified by statute but represents a public policy decision not to punish despite proof of the crime.

(People v. Heath (1989) 207 Cal.App.3d 892, 900-901.)  "The situation presented to the defendant must be of an emergency nature, threatening physical harm, and lacking an alternative, legal course of action.  [Citation.]  The defense involves a determination that the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged.  [Citation.] . . . [¶]  An important factor of the necessity defense involves the balancing of the harm to be avoided as opposed to the costs of the criminal conduct.  [Citation.]"  (Id. at p. 901.)

Under defendant's theory, the possible harm to Ransom, who was fleeing from the group of angry Blood gang members, was greater than the possible harm from shooting at an occupied vehicle for benefit of the gang.  Defendant seriously understates the harm of his criminal conduct.  He ignores the presence of several young children who could have been injured or killed, no matter how careful defendant claims he was.  He omits his membership in the Del Paso Heights Bloods criminal street gang.  It was the gang factor that turned a trivial matter into a violent confrontation.  It was defendant's membership in the gang that placed him in the unhappy position he found himself.  Further, the crime he committed is punishable by a life sentence, an indication the Legislature has deemed it a significant evil.  Because the harm defendant claims he was avoiding was not greater than that sought to be prevented by proscribing shooting at an occupied vehicle for the benefit of a criminal street gang, the trial court did not err in refusing to instruct on necessity.

(Slip Op. at p. 10-11.)

Similar to Claim III, Petitioner's burden is especially heavy under these circumstances because an omission in the jury instructions is less likely to be prejudicial than a misstatement of law.  See Henderson, 431 U.S. at 155.   As explained by the United States Supreme Court in analyzing the differences between the common law defenses of duress and necessity:

[d]uress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law.  While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils.  Thus, where A destroyed a dike because B threatened to kill him if he did not, A would argue that he acted under duress, whereas if A destroyed the dike in order to protect more valuable

14

property from flooding, A could claim a defense of necessity.

United States v. Bailey, 444 U.S. 394, 409-410 (1980).  Under California law, to justify an

instruction on the defense of necessity, "there must be evidence sufficient to establish that

defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3)

without creating a greater danger than the one avoided, (4) with a good faith belief in the

necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in

which he did not substantially contribute to the emergency."  People v. Pepper, 41 Cal. App. 4th

1029, 1035, 48 Cal. Rptr. 2d 877 (1996).

Here, the California Court of Appeal determined that the trial court did not err in failing

to give the instruction because Petitioner substantially contributed to the emergency and

Petitioner created a greater danger than the one avoided.  The Court of Appeal's decision is not

contrary to clearly established federal law nor is it an unreasonable determination of the facts.

For example, the Court of Appeal noted that Petitioner's membership in a gang "turned a trivial

matter into a violent confrontation" because it was Petitioner's membership in the Bloods that

placed him in the situation whereby Whitfield demanded that he shoot Ransom.  Ransom had

disrespected the Bloods and confronted them for their gang membership and Petitioner was a

member of the Bloods.  The Court of Appeal also correctly determined that the necessity defense

in this case was not proper because Petitioner was not avoiding a greater danger because he was

shooting while in the presence of several young children.  As one California court has noted:

> the necessity defense is inappropriate in this case because its
> recognition would encourage rather than deter violence.  Kearns
> committed a number of armed robberies and in so doing created a
> risk of serious bodily injury or death to each of her victims.  In this
> situation, "[v]iolence justified in the name of preempting some
> future, necessarily speculative threat to life is the greater, not the
> lesser evil" and thus the public policy considerations on which the
> necessity defense is based do not support application of the defense
> here.

People v. Kearns, 55 Cal. App. 4th 1128, 1135, 64 Cal. Rptr. 2d 654 (quoting People v.

McKinney, 187 Cal. App. 3d 583, 587, 231 Cal. Rptr. 729 (1986)).  Accordingly, there was

15

1    insufficient evidence to support the defense of necessity, and the failure did not so infect the trial

2    so that the resulting conviction violated Petitioner's due process rights.

3         Petitioner also argues that the necessity defense should have been given because, "[a]

4    reasonable jury might also concurrently conclude that shooting the gun and trying not to hit the

5    station wagon would be the lesser of two evils compared to doing nothing and thereby causing

6    Whitfield to pursue and possibly kill or seriously injure Montue's friend, Ransom." (Pet'r's Pet.

7    at p. 22.)  As discussed in supra Part V.B, Petitioner's theory at trial did not involve a Whitfield

8    threat to Ransom, rather, it involved Whitfield's threat to Petitioner.  Thus, Petitioner does not

9    adequately establish that his shooting at Ransom's occupied vehicle was necessary to prevent a

10   significant evil of Whitfield attacking Ransom.  In light of the fact that several of the factors

11   regarding the defense of necessity lacked sufficient evidence under the applicable law, the failure

12   of the trial court to give the instruction did not so infect the entire trial that the resulting

13   conviction violated due process.  See Byrd, 566 F.3d at 860.

14        The failure to give the necessity defense did not have a substantial and injurious effect or

15   influence in determining the jury's verdict as there was no reasonable probability that the jury

16   would have arrived at a different verdict had the instruction been given.  See id.  As noted, the

17   trial court instructed the jury on the duress defense which was premised on Petitioner's theory

18   that Whitfield threatened Petitioner to "take care" of Ransom or else Whitfield would "take care"

19   of Petitioner.  Petitioner's necessity argument was premised under the same facts as his duress

20   theory, namely Whitfield's threats to Petitioner.  By finding Petitioner guilty, the jury obviously

21   rejected Petitioner's duress theory.  In light of the fact that the jury rejected the duress defense,

22   there was no reasonable probability that they would have arrived at a different verdict had the

23   necessity defense been given under these specific circumstances.  Petitioner is not entitled to

24   federal habeas relief on Claim IV.

25        D.  Claim V

26        In Claim V, Petitioner makes several ineffective assistance of counsel arguments.  First,

16

1   Petitioner argues that counsel was ineffective for stipulating to a felony conviction when the

2   conviction was only a misdemeanor conviction.  Petitioner exhausted his state court remedies

3   with respect to this argument.  Second, Petitioner argues that trial counsel was ineffective for

4   failing to object to Whitfield's plea agreement which dissuaded Whitfield from testifying during

5   Petitioner's trial.  Third, Petitioner makes several arguments regarding counsel's failure to make

6   various hearsay objections at trial and failing to file motions in limine regarding this testimony.

7   Fourth, Petitioner argues that counsel was ineffective for failing to object to the introduction of

8   "booking" photos of Petitioner into evidence.  Fifth, Petitioner asserts that counsel's failure to

9   address inconsistencies in the three eyewitnesses testimony during his closing argument

10  constituted ineffective assistance of counsel.  Sixth, Petitioner believes that counsel's admission

11  during closing argument that Petitioner is a gang member constituted ineffective assistance of

12  counsel.  Seventh, Petitioner argues counsel's failure to proceed with a misidentification defense

13  rendered his assistance constitutionally ineffective.  Eighth, Petitioner asserts that he was denied

14  his right to "call witnesses."  Besides Petitioner's first argument within Claim V, he did not raise

15  any of the remaining seven issues to the California Supreme Court.  Thus, those arguments are

16  deemed unexhausted.  Even though those argument are deemed unexhausted, as previously

17  stated, a federal habeas court can deny unexhausted claims so long as they are not "colorable."

18  For the following reasons, Petitioner is not entitled to federal habeas relief on any of these

19  arguments within Claim V.

20              i.  Stipulating to Prior Conviction

21          First, Petitioner argues that counsel was ineffective when he stipulated that Petitioner was

22  convicted of violating California Vehicle Code § 10851[3] as a felony and thus could be impeached

23  _____

24          [3] California Vehicle Code § 10851(a) states:

25              Any person who drives or takes a vehicle not his or her own,
                without the consent of the owner thereof, and with intent either to
26              permanently or temporarily deprive the owner thereof of his or her

with the conviction.  The California Court of Appeal analyzed this argument on direct appeal and

stated the following:

> [Petitioner] faults counsel for stipulating that his conviction for
> violating [California] Vehicle Code section 10851 was a felony,
> when it was actually a misdemeanor.  The prosecution was then
> able to impeach defendant with his felony conviction . . . .
> "Defendant has the burden of proving ineffective assistance of
> counsel.  [Citation.]  To prevail on a claim of ineffective assistance
> of counsel, a defendant "'must establish not only deficient
> performance, i.e., representation below an objective standard of
> reasonableness, but also resultant prejudice.'"  [Citation.]  A court
> must indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance.
> [Citation.]  Tactical errors are evaluated in the context of the
> available facts.  [Citation.]  To the extent the record on appeal fails
> to disclose why counsel acted or failed to act in the manner
> challenged, we will affirm the judgment unless counsel was asked
> for an explanation and failed to provide one, or unless there simply
> could be no satisfactory explanation.  [Citation.]  Moreover,
> prejudice must be affirmatively proved; the record must
> demonstrate 'a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been
> different.  A reasonable probability is a probability sufficient to
> undermine confidence in the outcome.'  [Citation.]"  (People v.
> Maury (2003) 30 C al.4th 342, 389.)

> In ruling that the prosecution could impeach with the Vehicle Code
> section 10851 conviction, the trial court found it was a crime of
> moral turpitude and the criteria of Evidence Code 252 supported its
> admission.  The court did not sanitize it because its prejudicial
> effect was minimal compared to the charges of serious, violent
> crimes.  The parties stipulated to the conviction as a felony.  In
> rebuttal argument, the prosecution argued defendant was a liar and
> he tried to get others to lie for him.  The prosecutor continued, "We
> haven't even talked about the fact that he is a convicted felon.  I
> mean no other witness has any of these convictions on their
> record."

> Defendant argues that because his conviction was a misdemeanor,
> counsel was deficient and his error was prejudicial.  Although a

---

> title to or possession of the vehicle, whether with or without intent
> to steal the vehicle, or any person who is a party or an accessory to
> or an accomplice in the driving or unauthorized taking or stealing,
> is guilty of a public offense and, upon conviction thereof, shall be
> punished by imprisonment in a county jail for not more than one
> year or in the state prison or by a fine of not more than five
> thousand dollars ($5,000), or by both the fine and imprisonment.

18

misdemeanor involving moral turpitude may be used for
impeachment, only the conduct is admissible; the fact of a
misdemeanor conviction is inadmissible hearsay.  (People v.
Wheeler (1992) 4 Cal.4th 284, 295-300.)  Defendant contends he
was prejudiced by being branded a felon.

We find no prejudice.  The case against defendant was very strong;
three disinterested witnesses saw him fire.  Although defendant
refused to admit his gang membership, a detective testified he met
the criteria and counsel admitted defendant was a gang member.
Defendant's credibility was effectively impeached by the
prosecution, without the prior conviction.  Defendant admitted he
asked a fellow gang member to be an alibi witness.  Defendant
wrote notes in jail in which he tried to blame Ransom for having
the gun.  It is not reasonably probable that the result would have
been different without admission of the Vehicle Code section
10851 conviction.  (People v. Maury, supra, 30 Cal.4th 342, 389.)

(Slip Op. 11-14.)

The Sixth Amendment guarantees effective assistance of counsel.  In Strickland v.
Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating
ineffective assistance of counsel.  First, the petitioner must show that considering all the
circumstances, counsel's performance fell below an objective standard of reasonableness.  See id.
at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result
of reasonable professional judgment.  See id. at 690.  The federal court then must determine
whether in light of all the circumstances, the identified acts or omissions were outside the wide
range of professional competent assistance.  See id.

Second, a petitioner must affirmatively prove prejudice.  See id. at 693.  Prejudice is
found where "there is a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a
probability sufficient to undermine confidence in the outcome."  Id.  A reviewing court "need not
determine whether counsel's performance was deficient before examining the prejudice suffered
by defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient prejudice . . .  that course should be
followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at

19

1   697).

2         In this case, it is easier to dispose of this ineffective assistance argument on the ground of

3   a lack of sufficient prejudice.  As noted by the Court of Appeal, the evidence in this case against

4   Petitioner was strong.  It included the testimony of three uninterested witnesses who testified that

5   they saw Petitioner shoot at Ransom's occupied vehicle with a firearm.  The gang expert testified

6   that Petitioner was a member of the Del Paso Heights Bloods gang based on Petitioner's

7   involvement in this case, his tattoos and the company that Petitioner kept.  (See Reporter's Tr. at

8   p. 223.)  Petitioner failed to establish to a reasonable probability that the outcome would have

9   been different had trial counsel not stipulated that his conviction for California Vehicle Code

10  Section 10581 was a felony.  Thus, he is not entitled to federal habeas relief on this argument.

11                    ii.  Failing to Object to the Whitfield Plea Agreement

12        Petitioner next argues that counsel was ineffective for failing to thwart the purportedly

13  improper plea agreement between the prosecution and Whitfield.  Whitfield entered a plea of no

14  contest to attempted murder for a stipulated sentence of eight years.  As part of that plea bargain,

15  Whitfield would assert his Fifth Amendment right not to testify or else risk possible revocation

16  of his plea agreement if called as a witness at Petitioner's trial.  (See Reporter's Tr. at p. 11.)  On

17  direct appeal, the California Court of Appeal rejected this argument and stated the following:

18            Defendant's contention that his counsel was prejudicially deficient
              in failing to do something about the plea agreement with Whitfield
19            fails for several reasons.  First, the record indicates the plea
              agreement was recited in court when neither defendant nor his
20            counsel was present.  The record does not show counsel knew
              about the agreement that Whitfield would take the Fifth if called as
21            a witness.  Nor does it show that defendant intended to call
              Whitfield as a witness or that Whitfield could provide testimony
22            favorable to defendant.  While we have concerns about a plea
              agreement that might interfere with defendant's right to present
23            witnesses on his behalf (see In re Martin (1987) 44 Cal.3d 1),
              defendant has failed to carry his burden to show either deficient
24            performance or prejudice.  (People v. Maury, supra, 30 Cal.4th
              342, 389.)
25

26  (Slip Op. at p. 14.)  Neither Petitioner nor his counsel were present at Whitfield's plea hearing.

                                                    20

As noted by the California Court of Appeal, the record does not show, nor does Petitioner argue in his federal habeas petition that his counsel knew that this was part of the plea agreement with Whitfield.  Thus, counsel's performance did not fall below an objective standard of reasonableness for failing to thwart something that he was unaware took place.

Petitioner also fails to demonstrate prejudice with respect to this argument.  "Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different."  See Wong v. Belmontes, – U.S. –, 130 S.Ct. 383, 390-91 (2009).  Petitioner cannot meet his burden of showing ineffective assistance of counsel by presenting conclusory statements.  See United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984).  Petitioner speculates that Whitfield would have presented helpful testimony, however, he provides no affidavit, no description of what Whitfield would have stated in his testimony or even that Whitfield would have been willing to testify at Petitioner's trial absent the plea agreement.  See Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (no ineffective assistance where petitioner did "nothing more than speculate that, if interviewed," a witness might have given helpful information); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (no ineffective assistance of counsel where there was no evidence in the record that an alibi witness actually existed and petitioner failed to present an affidavit establishing that the alleged witness would have provided helpful testimony for the defense); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what a proposed witness would say is not enough to establish prejudice).  In light of the circumstances outlined above, Petitioner fails to present a "colorable" ineffective assistance of counsel claim with respect to this argument.  Thus, he is not entitled to federal habeas relief.

### iii.  Failure to Object to Hearsay Evidence

Petitioner lists fourteen separate instances in the record where he asserts that counsel was ineffective for failing to object to inadmissible hearsay testimony.  First, Petitioner asserts that counsel should have objected to the inadmissable hearsay testimony of Latanya Burns as it

21

related to a 2002 drive-by shooting involving gangs.  As Petitioner states in his petition, he was not involved in this 2002 drive-by shooting.  The evidence related to Petitioner's conviction in this case was strong.  It included the testimony of three uninterested eyewitness who all saw Petitioner shoot at the occupied vehicle.  Petitioner fails to show to a reasonable probability that the outcome of the proceedings would have been different had counsel objected to Latanya Burns' testimony of this 2002 incident to the extent it included inadmissible hearsay.

Next, Petitioner asserts that counsel was ineffective for failing to object to purported hearsay testimony regarding an incident between Ransom and Whitfield two days before the circumstances giving rise to Petitioner's conviction.  Petitioner also argues that the conversation between Ramsey and various members leading up to the shooting at issue was inadmissible hearsay.  Here, it is easier to dispose of these ineffective assistance of counsel arguments under the prejudice prong.  See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").  As with Petitioner's prior argument, he fails to show that he was prejudiced.  There was direct uninterested eyewitness testimony regarding the incident and Petitioner's involvement such that it is not reasonably probable that a different outcome would have occurred had defense counsel made these hearsay objections.

Petitioner also argues that counsel was ineffective for failing to object to LaTayna Burns' statement that after the shooting, "a guy by the name of David Reid said, 'Come on, man.  Let's go get that nigger.  We going to get him.'  Rico and David Reid, jumps in a two door Ford Mustang, silver, to go chase Donshea."  (Reporter's Tr. at p. 104-05.)  Once again, Petitioner fails to show that he was prejudiced under the Strickland standard as the case against him violating Cal. Penal Code § 246 was strong for the reasons previously described.

Petitioner next asserts that counsel should have objected to LaTanya Burns' testimony regarding David Reid and Freddy Kruegar [who Burns testified was really Adrian Watts] regarding her "snitching" to police about the incident that had occurred between Ransom,

22

1   Whitfield and the Petitioner.  Contrary to Petitioner's argument, counsel did make a hearsay

2   objection to this testimony which was overruled by the trial court.  (See Reporter's Tr. at p. 107.)

3   Thus, counsel cannot be deemed ineffective for failing to object to this testimony because he in

4   fact did make a hearsay objection.  Furthermore, Petitioner failed to show the requisite level of

5   prejudice under the Strickland standard with respect to this argument for the reasons previously

6   described.

7         Finally, Petitioner raises several particular instances where the gang expert purportedly

8   testified using inadmissible hearsay.  Petitioner asserts that counsel was ineffective for failing to

9   object to the admission of this evidence.  At the outset, Petitioner lists several testimonial items

10   that were not hearsay, but were only the gang expert's recitation of facts.  For example, Petitioner

11   argues that, the "[a]dmission of evidence of unrelated Blood behavior - a change in the Heights

12   because of drive-by shooting regarding other people other than Montue" was inadmissible

13   hearsay.  (Pet'r's Pet. at p. 32.)  A counsel's failure to object to testimony on hearsay grounds is

14   not ineffective where the objection would have been properly overruled.  See Matylinsky v.

15   Budge, 577 F.3d 1083, 1094 (9th Cir. 2009), cert. denied, – U.S. –, 130 S.Ct. 1154 (2010); Rupe

16   v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be

17   deficient performance").  As some of the items Petitioner lists regarding the gang expert's

18   testimony were not hearsay, any purported hearsay objection by his counsel would have been

19   overruled.  Thus, counsel's performance did not fall below an objective standard of

20   reasonableness for failing to object to several of the items Petitioner lists in his federal habeas

21   petition.

22         Additionally, in Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held

23   that out-of-court statements that are testimonial in nature are barred under the Confrontation

24   Clause, unless the witnesses are unavailable and defendants had a prior opportunity to cross-

25   examine the witnesses.  In the context of Petitioner's arguments regarding the purported hearsay

26   statements relied on by the gang expert, California courts have noted the following:

The rule is long established in California that experts may testify as to their opinions on relevant matters and, if questioned, may relate the information and sources on which they relied in forming those opinions. Such sources may include hearsay. (See People v. Gardeley (1996) 14 Cal.4th 605, 618-19, 59 Cal. Rptr.2d 356, 927 P.2d 713; Evid.Code § 801, subd. (B) [an expert's opinion may be based on matter "whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, . . ."].) In People v. Vy (2004) 122 Cal.App.4th 1209, 1223, footnote 10, 19 Cal. Rptr.3d 402, the court stated, "Of course, because the culture and habits of gangs are matters which are 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact' (Evid.Code, § 801, subd. (a)), opinion testimony from a gang expert, subject to the limitations applicable to expert testimony generally, is proper. [Citation.] Such an expert – like other experts – may give opinion testimony that is based upon hearsay, including conversations with gang members as well as with the defendant. [Citations.] Such opinions may also be based upon the expert's personal investigation of past crimes by gang members and information about gangs learned from the expert's colleagues or from other law enforcement agencies [Citations.]"  [¶] Crawford does not undermine the established rule that experts can testify to their opinions on relevant matters, and relate the information and sources upon which they rely in forming those opinions. This is so because an expert is subject to cross-examination about his or her opinions and additionally, the materials on which the expert bases his or her opinion are not elicited for the truth of their contents; they are examined to assess the weight of the expert's opinion.

People v. Thomas, 130 Cal. App. 4th 1209-10, 30 Cal. Rptr. 3d 582 (2005). Even if Petitioner's counsel had objected to the gang expert's purported hearsay testimony, it would have been denied as the expert was permitted to rely on this evidence under these circumstances. It is also worth noting that the gang expert based his opinion of Petitioner's gang membership on: (1) his tattoos; (2) his involvement in this particular case; and (3) his being seen in the company of other validated members of the Del Paso Heights Bloods gang. (See Reporter's Tr. at p. 223.), not necessarily any purported hearsay testimony. Petitioner is not entitled to federal habeas relief on this argument as it is not "colorable."

        iv.  Failure to Object to "Booking Photos"

Petitioner asserts that counsel was ineffective for failing to object to the admission of past

1   "booking photos."  Respondent contends that the photographs "were not booking photographs,

2   but contact photographs of Petitioner wearing gang colors while in the company of other

3   validated members of the Del Paso Heights Bloods." (Resp't's Answer at p. 26.)  Neither party

4   included copies of the photographs in this action.  The pictures of Petitioner were shown to the

5   gang expert during his testimony.  The gang expert was asked what about the photographs added

6   to his opinion that Petitioner was a member of the Del Paso Heights Bloods.  He stated that in

7   each photograph Petitioner had "a red shirt on which is the common color worn by Blood gang

8   members." (Reporter's Tr. at p. 225.)  The trial judge specifically instructed the jury at the time

9   that the gang expert was reviewing the photographs at issue that:

10              you are to consider this evidence only as to the defendant's
               involvement with the Del Paso Heights Bloods.  Don't infer or
11             assume from law enforcement contacts or booking that the
               defendant has been guilty of anything or that he has been involved
12             in criminal conduct.  This evidence is offered for the very limited
               purpose for ascertaining the defendant's, that is Mr. Montue's,
13             involvement, support of, activities with the Del Paso Heights
               Bloods.  For no other reason.  Consider it only for that purpose,
14             only.

15   (Reporter's Tr. at p. 225.)  Here, Petitioner has not demonstrated that he was prejudiced by

16   counsel's failure to object or to exclude these photographs.  The trial court admonished the jury

17   that they should consider the photographs for a very limited purpose only, namely his

18   involvement with the Del Paso Heights Bloods.  Juries are presumed to follow a court's limiting

19   instruction with respect to the purposes for which evidence is admitted.  See Aguilar v.

20   Alexander, 125 F.3d 815, 820 (9th Cir. 1997).  Petitioner failed to show to a reasonable

21   probability that the outcome of the proceeding would have been different had counsel objected to

22   the photographs.  Viewed in the record as a whole, it is not reasonably probable that but for

23   counsel's purported error, the result of the proceeding would have been different.  Thus,

24   Petitioner is not entitled to federal habeas relief on this argument as it is not "colorable."

25   //

26   //

1

      v.  Counsel's Failure to Address Inconsistencies in Eyewitness Testimony During
Closing Argument

2

3      Next, Petitioner asserts that counsel should have addressed various inconsistencies with

4 the testimony of the three women eyewitnesses who testified for the prosecution.  Petitioner

5 asserts that there was conflicting testimony regarding:  (1) whether Montue moved while

6 shooting the occupied vehicle or whether he stood still; (2) where Ransom's car was when

7 Petitioner started shooting; (3) whether Petitioner spoke to Ransom before the shooting; (4)

8 whether the car that went after Ransom's car followed Ransom or drove off in the other

9 direction; and (5) where the witnesses were located at the time of the shooting.  Petitioner argues

10 that "[t]his evidence clearly should have been pointed out to a jury."  (Pet'r's Pet. at p. 36.)  By

11 failing to point out these purported inconsistencies, Petitioner argues that counsel was

12 ineffective.

13      Counsel was not ineffective for failing to point out these inconsistencies during his

14 closing argument.  Petitioner's defense at trial was that he was under duress by Whitfield who

15 threatened to "take care" of Petitioner if he did not "take care" of Ransom.  Petitioner admitted to

16 firing his weapon.  The purported inconsistencies cited above did not relate to Petitioner's duress

17 defense.  Counsel's performance did not fall below an objective standard of reasonableness for

18 pointing out purported inconsistencies that had no bearing on Petitioner's defense.  Counsel's

19 omissions during closing argument were not outside the range of professional competent

20 assistance to render it constitutionally ineffective.  Petitioner fails to show that this argument is

21 "colorable."

22

      vi.  Counsel's Admission during Closing Arguments that Petitioner is a Gang
Member

23

24      Petitioner also argues that counsel was ineffective when he "admitted" that Petitioner was

a gang member.  During closing argument, counsel stated to the jury:

25

26

> [h]ere is an important question, is Deladier a gang member?
> Unfortunately, yes.  When I asked him on the stand, "Are you a

gang member," he said, "yes" (verbatim).  [¶]  Now, I submit I
don't think he wanted to admit that to you people.  I don't think he
wanted to admit to that.  Did he appear happy to admit it?  Or was
he more embarrassed or even scared to admit he is a gang member?
It is not something I think a gang member would typically want to
tell citizens.  [¶] But my question to you is is he a typical gang
member?  Is he a gang member "to the core," as I think Mr. Ortiz
put it?  The answer is no, he is not a typical gang member.  [¶]  The
evidence produced in this case shows he is not.

(Reporter's Tr. at p. 456-57.)  During his direct testimony, the following colloquy took place

between Petitioner and his counsel:

> Q:  Mr. Montue, are you what some might consider a gang
> member?
> A:  Yes.  Like what people think about me?
> Q:  Yes.
> A:  Yes.
> Q:  Mr. Montue, do you consider yourself a gang member?
> A:  No.
> Q:  How do you not consider yourself a gang member?
> A:  Because I don't get involved in any gang activities, so I
> wouldn't consider myself a gang member.

(Id. at p. 287.)  Petitioner fails to show to a reasonable probability that the outcome of the

proceeding would have been different with respect to this ineffective assistance of counsel

argument.  As illustrated by the colloquy above, while Petitioner stated that he did not himself

think of himself as a gang member, he testified that others considered him a gang member.

There was also other evidence in the record which supported that Petitioner was a gang member.

For example, the gang expert also testified based upon several factors including Petitioner's

tattoos, his actions giving rise to the charges and the company he kept that  that Petitioner was a

member of the Del Paso Heights Blood gang.  (See id. at p. 223.)  Petitioner fails to show

prejudice under the Strickland standard.  Petitioner is not entitled to federal habeas relief on this

argument as it is not "colorable."

> vii.  Counsel's Failure to Proceed with a Misidentification Defense

Petitioner also argues that counsel was ineffective for failing to proceed with a

misidentification defense.  In Bean v. Calderon, 163 F.3d 1073, 1081-82 (9th Cir. 1998), the

27

1   Ninth Circuit analyzed whether counsel was ineffective for failing to pursue a diminished

2   capacity defense.  The court determined that counsel's performance was not deficient.  It

3   explained that "because the diminished capacity defense Bean proposes would have conflicted

4   with the alibi theory, 'it was within the broad range of professionally competent assistance for

5   [Roehr] to choose not to present psychiatric evidence which would have contradicted the primary

6   defense theory.'" Id. at 1082 (quoting Correll v. Stewart, 137 F.3d 1404, 1411 (9th Cir. 1998));

7   see also Turk v. White, 116 F.3d 1264, 1266 (9th Cir. 1997) (counsel's performance was not

8   constitutionally deficient by solely pursuing a claim of self-defense where insanity defense was a

9   conflicting theory that "would have confused the jury and undermined whatever chance Turk had

10  of an acquittal").

11      Similarly, use of a misidentification defense theory would have contradicted with

12  Petitioner's duress defense and confused the jury.  Here, Petitioner admitted on the stand that he

13  fired the gun.  (See Reporter's Tr. at p. 293.)  Petitioner also testified at trial that he was going to

14  put his friend on the stand to lie to the jury about a potential alibi.  (See id. at p. 298-99.)

15  Petitioner's counsel's performance was not deficient by failing to present a misidentification

16  defense that was contradicted by Petitioner's own sworn testimony during trial.  Additionally,

17  Petitioner failed to show that he was prejudiced.  Petitioner has not shown to a reasonable

18  probability that the outcome would have been different had counsel pursued a misidentification

19  defense.  He cites no witnesses who would have supported such a defense theory.  In fact, as

20  stated above, Petitioner testified that he was trying to have a friend lie during his trial about a

21  potential alibi.  For the reasons stated above, Petitioner is not entitled to federal habeas relief on

22  this argument of ineffective assistance of counsel since it is not "colorable."

23              viii.  Right to Call Witnesses

24      Finally, Petitioner alludes to the fact that he was denied his right to "call witnesses."

25  (Pet'r's Pet. at p. 41.)  Petitioner does not show that his constitutional rights to call witnesses at

26  trial was violated.  He fails to indicate what witnesses should have been called.  "Conclusory

1    allegations which are not supported by a statement of specific facts do not warrant habeas

2    relief."  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  Therefore, Petitioner's argument is not

3    "colorable."

4                                        VII.  CONCLUSION

5         For the reasons discussed in this Order, Petitioner is not entitled to federal habeas relief.

6    Should petitioner wish to appeal the court's decision, a certificate of appealability must issue.  28

7    U.S.C. § 2253(c)(1); Hayward v. Marshall, 603 F.3d 546, 554 (9th Cir. 2010) (en banc).  A

8    certificate of appealability may issue where "the applicant has made a substantial showing of the

9    denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must

10   "indicate which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

11        A certificate of appealability should be granted for any issue that petitioner can

12   demonstrate is "'debatable among jurists of reason,'" could be resolved differently by a different

13   court, or is "'adequate to deserve encouragement to proceed further.'"  Jennings v. Woodford,

14   290 F.3d 1006, 1010 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).[4]  In

15   this case, however, petitioner failed to make a substantial showing of the denial of a

16   constitutional right with respect to any issue presented.

17        Accordingly, IT IS HEREBY ORDERED that:;

18        1.    Petitioner's Petition for writ of habeas corpus is DENIED;

19        2.    A certificate of appealability shall not issue; and

20        3.    The Clerk is directed to close the case.

21   //

22   //

23   //

24

---

25   [4]  Except for the requirement that appealable issues be specifically identified, the standard
     for issuance of a certificate of appealability is the same as the standard that applied to issuance of
26   a certificate of probable cause.  See Jennings, 290 F.3d at 1010.

1   DATED:  December 21, 2010

2

3

4   _____

5   TIMOTHY J BOMMER
    UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26